# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4304 | **DATE** | 12/9/2003 |
| **CASE TITLE** | WESTFALIA-SURGE vs. DAIRY TEX INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Enter memorandum opinion and order denying defendant's motion to dismiss for lack of personal jurisdiction.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 1 0 2003 | |
| | Notified counsel by telephone. | | date docketed | 22 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed | mailing deputy initials |

WESTFALIA-SURGE, INC.,

    Plaintiff,

v.

DAIRY TEX INC.,

    Defendant.

No. 03 C 4304
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

In 1995, a dairy farmer named James Traweek purchased automated dairy milking equipment manufactured by the Plaintiff, Westfalia-Surge Inc. ("Westfalia"), sold and distributed in Texas by authorized dealer Leland Randal Walker's company Walker Dairy Supply Inc. ("Walker"), which was subsequently acquired by Dairy Tex Inc. ("Dairy Tex"). Eventually, Traweek experienced problems with the milking of his cows and filed suit against Westfalia. Westfalia settled the claim with Traweek and then filed its own five-count complaint against Walker and Dairy Tex seeking reimbursement of the settlement amount as well as other incidental costs incurred. According to Westfalia, Dairy Tex assumed any responsibility for Traweek's losses through the purchase of Walker's assets.

In 1998 and 1999 (after the asset purchase), Dairy Tex entered into two consecutive master dealership agreements with Westfalia authorizing Dairy Tex to resell, install, purchase, and service Westfalia products. It is unclear whether Dairy Tex's representatives were in Illinois when they signed the master dealer agreement. During their relationship, all orders made by Dairy Tex were placed with Westfalia's Naperville, Illinois office. The ordered equipment was

then shipped from the Naperville, Illinois location to Dairy Tex in Texas. The master dealership agreement contained a choice of law provision designating the use of Illinois law in any disputes.

At all relevant times, Dairy Tex was a Texas corporation with its principal place of business in Cleburne, Texas. Dairy Tex was not licensed to do business in Illinois, did not solicit business or advertise in Illinois, had no offices in Illinois, and did not have a registered agent in Illinois. Additionally, there is no indication that any personnel from either Walker or Dairy Tex visited Illinois to negotiate or conduct business with Westfalia.

Dairy Tex now moves to dismiss Westfalia's complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2)[1]. In order to survive a Rule 12(b)(2) motion, the plaintiff must establish a *prima facie* case for personal jurisdiction. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987). Once the *prima facie* case has been established, the court must determine whether the assertion of personal jurisdiction is compatible with due process. *Logan Prods. v. Optibase, Inc.*, 103 F.3d 49, 52 (7th Cir. 1996). For the purposes of this motion, I may review affidavits from both parties but I must resolve any conflicts in favor of the plaintiff. *O'Hare Int'l Bank v. Hampton*, 437 F.2d 1173, 1176 (7th Cir. 1971). Westfalia claims, over Dairy Tex's objection, that specific personal jurisdiction may be properly asserted because Dairy Tex's activities fall within the purview of the Illinois Long Arm Statute and create the requisite minimum contacts necessary to satisfy state and federal due process[2].

---

[1] The other defendants, Walker and his related companies, filed a 12(b)(6) motion to dismiss Westfalia's complaint, which was granted. Dairy Tex did not join in that motion.

[2] In the sections of their response dealing with the Illinois Long Arm Statute, under both the Law and Argument headings, Westfalia uses the phrase "doing business." (Resp. P.4 and P.5) This is a term of art usually associated with grounds for general jurisdiction. Since it is mentioned only in concert with Westfalia's discussion of specific jurisdiction, I will assume that

2

I turn first to the Illinois Long Arm Statute. According to the relevant provisions of the Illinois Long Arm Statute, a nonresident corporation may be subject to the court's personal jurisdiction if the corporation transacts business within Illinois or if the corporation makes or performs any contract substantially connected with the state, 735 ILCS 5/2-209(a)(1) and 735 ILCS 5/2-209(a)(7) respectively.

A defendant is considered to be transacting business within Illinois when he voluntarily seeks the benefits and protection of Illinois laws. *Ideal Ins. Agency, Inc. v. Shipyard Marine, Inc.*, 213 Ill. App. 3d 675, 680 (Ill. App. Ct. 2nd Dist. 1991)(citation omitted). Only the actions of the defendant are considered when making this determination. *Id.* The Illinois courts have considered the following to be significant when determining whether the defendant has transacted business: (1) who initiated the contract, (2) where the contract was entered into, and (3) where the performance of the contract was to take place. *Id.* (citing *Gordon v. Tow*, 148 Ill. App. 3d. 275, 280-281 (Ill. App. Ct. 1st Dist. 1986)).

The first factor, who initiated the contracted, is a nonissue here because on this point the record is silent. The second factor, where the contract was entered into, is in dispute but weighs slightly in favor of Dairy Tex transacting business. Westfalia claims that the master dealership agreement was signed and approved by both parties in Naperville, Illinois. Dairy Tex, on the other hand, claims only Westfalia's representative signed in Naperville, Illinois but does not give any alternative location for Dairy Tex's representatives. The signature page in Schedule A of Westfalia's Response shows that the dates given for Dairy Tex and Westfalia's representatives'

---

Westfalia is using this term interchangeably with the term "transacting business." Consequently, I will not address general personal jurisdiction.

3

signatures differ by just under three months suggesting to me that the parties were not together when they signed. However, I must resolve this disputed evidence in favor of Westfalia. While this finding does support Dairy Tex transacting business, I give it only minimal weight in my analysis.

This leaves the third factor, where the performance of the master dealership agreement took place. According to the terms of the master dealership agreement, Dairy Tex sent orders for equipment to Westfalia's Naperville, Illinois office, where the equipment was manufactured. Westfalia then filled and shipped those orders from its Naperville, Illinois plant to Dairy Tex in Texas. This indicates that substantial performance of the master dealership agreement took place in Illinois and weighs strongly in favor of Dairy Tex transacting business. *See Stepan Co. v. Winter Panel Corp.*, No. 95 C 762, 1995 U.S. Dist. LEXIS 16218 (N.D. Ill. Nov. 1, 1995), *Autotech Controls Corp. v. K.J. Elec. Corp.*, 256 Ill. App. 3d 721 (Ill. App. Ct. 1st Dist. 1993) (finding that the continual communications and deliveries under the distributorship agreement were enough alone to constitute the transactions of business); *Prevue Pet Prods. v. Targeted Media For Med., Inc.*, No. 02 C 6750, 2003 U.S. Dist. LEXIS 17196 (N.D. Ill. Sept. 26, 2003). Additionally, I find the choice of law provision in the master dealership agreements tends to show that Dairy Tex availed itself of Illinois law.

Dairy Tex argues that this is not enough to show it was transacting business because Westfalia's references to communications, purchase orders, and product shipments were vague and unspecific. However, other than claiming the assertions are vague, Dairy Tex does not dispute their existence. I find it hard to believe that Dairy Tex would purchase Walker's dealership and then enter into two consecutive master dealership agreements with a company

4

from which it did not intend to order and receive products. Therefore, I accept Westfalia's assertions as sufficient evidence of Dairy Tex's Illinois activities, and I find Westfalia has presented sufficient evidence to show that Dairy Tex was transacting business within the meaning of the Illinois Long Arm Statute. I also find that this cause of action arose from the transactions at issue--the sale of dairy equipment[3]. Westfalia has, therefore, met its burden of establishing a *prima facie* case for personal jurisdiction[4].

Now, I turn to the issue of due process. For personal jurisdiction to be proper, it must comport with state and federal due process. In a diversity action, a federal court sitting in Illinois may assert personal jurisdiction over a nonresident defendant only if an Illinois court would have jurisdiction. *RAR, Inc. v. Turner Diesel*, 107 F.3d 1272, 1275 (7th Cir. 1997). The Illinois Supreme Court has stated that its constitutional due process requires that jurisdiction only be asserted when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois. *Rollins v. Ellwood*, 141 Ill. 2d 244 (1990). Additionally, the Illinois Supreme Court has noted that federal law may be used as a guideline for construction of the Illinois due process clause. *Lewis v. Spagnolo*, 186 Ill. 2d 198, 227 (1999). Consequently, I will confine my discussion to whether federal due process allows the assertion of personal jurisdiction over Dairy Tex.

---

[3]There is weakness here–that Westfalia's cause of action arises out of a master dealership agreement that was entered into by Walker before Walker's assets were acquired by Dairy Tex. The impact of this fact is not brought out in Dairy Tex's briefing and is not considered in my opinion. If Dairy Tex finds this would make a difference, it may submit another 12(b)(2) motion and supporting memoranda providing proper support and analysis of this issue.

[4]Since I have found for jurisdiction under the transacting business provision of the Illinois Long Arm Statute, I do not address the applicability of the statute's contract provision.

5

Due process requires that a nonresident defendant have certain minimum contacts with the forum state such that maintenance of the suit there does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The following three criteria are examined to determine whether a court's jurisdiction over a nonresident defendant satisfies due process: whether the nonresident defendant had minimum contact with the forum state such that he could reasonably anticipate being haled into court there, whether the action arose out of or relates to the defendant's contacts with the forum, and whether it is reasonable to require the defendant to litigate in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-478 (1985).

Dairy Tex argues that assertion of personal jurisdiction would violate due process because it has not had the requisite minimum contacts with Illinois. Dairy Tex provides the following to show it lacks minimum contacts with Illinois: (1) Dairy Tex's principal place of business in Cleburne, Texas, (2) Dairy Tex is not licensed to do business in Illinois and has no offices or employees there, (3) Dairy Tex does not advertise or solicit business in Illinois, and (4) Dairy Tex did not undertake business or business negotiations in Illinois. While these facts do show that Dairy Tex has had only limited activities within Illinois, they do not defeat personal jurisdiction. Dairy Tex entered into a master dealership agreement with a company whose principal place of business was Illinois, it placed orders for products manufactured in Illinois, it received shipments of products sent from Illinois, and it agreed to use Illinois law to settle any legal disputes. Dairy Tex should have been reasonably aware that it could be haled into an Illinois court to litigate disputes related to its business dealings with Westfalia. While I do recognize that requiring Dairy Tex to litigate this case in Illinois might be somewhat

6

burdensome, I do not think it unreasonable. I find that Dairy Tex's actions have established the requisite minimum contacts and have satisfied the requirements of due process.

For the reasons stated herein, Dairy Tex's Motion to Dismiss for lack of personal jurisdictions is DENIED.

ENTER:

James B. Zagel
United States District Judge

DATE: 9 Dec 2003